### JENSEN v. MACARTNEY et al.

### Civ. No. 1026.

United States District Court
D. Minnesota, Fifth Division.

Feb. 19, 1951.

Ordner T. Bundlie (of Bundlie, Bundlie & Bundlie), Pipestone, Minn., for plaintiff.

James J. Courtney & Son, Duluth, Minn., for defendant.

DONOVAN, District Judge.

This motion for summary judgment is made by defendants in an action commenced by plaintiff to recover damages for alleged libel.[1] Plaintiff's action is based upon a letter with an unsigned statement accusing plaintiff of embezzlement, admittedly written and deposited in the mail by defendant Rose, and addressed to one J. Hofert.[2]

Defendant Macartney denies knowledge of the letter and each defendant by separate answer, in justification and excuse, alleges that the letter was written by Rose as a Customs Broker, and as such is privileged, and further that the quoted statement attached to the letter was used by them in good faith, and based upon legal proceedings between plaintiff's former employer and the plaintiff herein[3], and an action against Jensen's surety commenced in the United States District Court, District of Minnesota, Sixth Division[4], which was settled by payment of $3500 to Jensen's employer.

A third proceeding was commenced and testimony taken in 1944, wherein cancellation of Jensen's license to do business as a Custom House Broker is sought, and which is still pending before the Treasury Department without decision.

The action by the employer went against Jensen in the trial court, and in findings for said employer the court in its memorandum said: "That the defendant Jensen acted as a fiduciary and occupied a position of trust and confidence can hardly be open to doubt. That he did not act in good faith in establishing the business at Noyes in his own name is equally clear. It is also clear that the business he did at Noyes was substantially all with plaintiff's customers." The Supreme Court of Minnesota reversed for noncompliance by the employer North Dakota corporation with a

---

1. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A.

2. "F. E. Macartney
   Customs Broker
   Established 1923
   "J. A. Rose, Partner
   37 years customs experience
   Ranier, Minnesota.
   October 18, 1949
   "J. Hofert
   Box 3348
   Seattle, Washington
   Att: Mr. H. R. Fife
   "Gentlemen:
   "For your information, we are enclosing a statement furnished us showing actions of N. G. Jensen in the past.
   "The case is now pending with Government for revocation of his license and we do not believe that any responsible firm doing business with Customs would care to continue business relations with Jensen knowing the facts.
   "We had no knowledge of this matter until it was recently brought to our attention.
   "We greatly appreciate the past business and hope that all of your future business will be consigned through us.
   "Kindly keep this confidential as far as we are concerned.
   "Yours very truly,
   "F. E. Macartney
   /s/ J. A. Rose /s/
   "JAR:ER        J. A. Rose
   "For Prompt and Efficient Service—
   Consign To Me."

3. Union Brokerage Co. v. Jensen, 215 Minn. 207, 9 N.W.2d 721, affirmed 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227.

4. Union Brokerage Co. v. Commercial Casualty Insurance Company (not reported).

Minnesota statute governing qualifications for doing business in the State. There was no decision on the merits.

All of the foregoing proceedings are admitted by plaintiff Jensen, but he vigorously denies the truth of the libelous matter, and he asserts the reversal of the trial court of Kittson County in 1943 by the Supreme Court of Minnesota of the accusing action commenced by his former employer purges him of any alleged wrongdoing, and reliance upon the trial court's findings is at the peril of the user.

The above recital of facts will suffice for present purposes. One of the genuine issues is the charge of embezzlement contained in the letter written by defendant Rose over five years following the decisions by the Minnesota and United States Supreme Courts. The question as to whether this court should grant summary judgment is a serious one. The propriety of the granting of such motion is not free from doubt. In such a situation the burden of establishing the non-existence of genuine issues of fact is on the moving party; hence all doubts must be resolved against defendants in considering their motions. The court does not determine issues of fact on a motion for summary judgment, but considers admissible evidence submitted under Rule 56, as distinguished from conclusions of law, with a view to determining the existence or nonexistence of genuine issues of fact.[5]

On the showing made, defendants are not entitled to judgment as a matter of law. Obiter dictum may be justified from here on. The pleadings, admissions, oral arguments and briefs of counsel are characteristic of this type of litigation. Not infrequently the plaintiff fails in proving libel. Again the damages visualized by the offended plaintiff are often unrealistic and all out of proportion to what the trier of the facts may conclude. In the spring of 1912, a statesman who had occupied the Presidency with honor and distinction commenced an action for libel,

presented evidence for several weeks in a court of record, and upon failure of proof by defendant, a verdict for nominal damages was returned by direction of the court. The magnanimous plaintiff undoubtedly would have been satisfied with an apology or a retraction on the part of the defendant.

It is possible for counsel, with the aid of the Federal Rules of Civil Procedure, to leave the bitterness of the litigating parties back of them and dispose of the issues amicably at a pre-trial conference.

Defendants' motion for summary judgment is denied.

It is so ordered.

---

5. Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318.